Opinion of Ford, J.
This ejectment was brought by Minard Farley to obtain possession of a certain lot of land, in order to take, the profits of it until they should satisfy the arrears of a certain rent charge, which he claims to have issuing out of the same, and that originated and was transferred in the following manner.
One James Logan, by deed of the 1st of June, 1740, in consideration of rents and covenants mentioned therein, bargained and sold to Joseph Smith, his heirs and assigns, 382 acres of land in *the county of Hunterdon; yielding [*264 and paying to the said James Logan, his heirs and assigns for the same, for the term of three years, the yearly rent of five pistoles ; and for the next seven years, a yearly rent, at the rate of two and a half pistoles per hundred acres ; and for the next term of 107 years, a yearly rent at the rate of three pistoles per hundred acres ; and after the expiration of the last mentioned term, That is to say, the term of 121 *314 years from the time of the first entry of the land, which will be in the year 1857, the full yearly value of the land with its improvements is to be fairly estimated, and a moiety of what it exceeds the last mentioned rent, is to be added to-the last mentioned rent, and become a new rent, to be paid forever; and in like manner-the like proceeding is to'be-renewed at the- expiration of every like term of 121 years forever after; then follows a covenant of Joseph Smith, his executors and administrators to pay the said rents. And if it shall happen that any of the said yearly rents shall be behind and unpaid, it is deemed lawful for the said James Logan, his heirs or assigns, to enter on the said land or any part hereof, and distrain for the same : Then follows the-ensuing proviso : “ Provided always, that if any of the rents hereby reserved shall be in arrears and unpaid by the space of twelve months next after the day when the same ought to be paid, and no sufficient distress to satisfy the same can be found and taken in and upon the hereby granted premises, then it shall and may be lawful to and for the said James Logan, his heirs and assigns or any of them, into and upon the said premises and the buildings thereon erected or to be erected, and into every part and parcel thereof with their appurtenances, wholly to re-enter, and the same then and from thenceforth to have again and re-possess as in and of his and their former estate, and the said Joseph Smith, his heirs and assigns thereon and from thenceforth utterly to expel and remove and put out until the said arrears with all the charges thereon accruing be fully satisfied and paid.”
On James Logan dying seized of this rent, his son and heir at law, James Logan, the 10th June, 1758, bargained and sold 1900 acres (including these 382 acres therein) to Stephen Crane, Robert Ogden and Ralph Smith, their heirs and assigns, as tenants in common, together with the rents granted out of the same or any part thereof, whereby the *265] rent in question became transferred to them *as far *315 as his deed could convey it. Upon a partition of these 1900 acres among themselves, the 14th June, 1758, Ralph Smith released (among other things) his share of estate in this rent to the other two, whereby Stephen Crane and Robert Ogden became seized of the whole as tenants in common; and being so seized, by deed of the 14th August, 1758, they bargained and sold one tenth and one fortieth part thereof to Jacob D. Hart, who devised the same to John D. Hart, who by deed of 17th January, 1795, bargained and sold the said tenth and fortieth to David and William Crane. Afterward, Robert Ogden, the devisee of Robert Ogden before mentioned, by deed of the 17th December, 1795, bargained and sold all his estate and interest therein, to the same David and William Crane, and thus they became entitled to the whole, excepting that part which belonged to their father Stephen Crane. Upon their father dying intestate, the 1st June, 1780, his said share descended to his five sons and one daughter, in the proportion of two elevenths to a son, and one eleventh to a daughter. Of these shares, four elevenths came to David and William in their own right, and two elevenths by conveyance from their brother Stephen; and thus they came to claim the whole of the rent except five elevenths of what was their father’s share. On the 22d May, 1800, William released all his estate in the rent to his brother David Crane ; and on the 26th January, 1801, David Crane bargained and sold the whole rent to Minard Earley, the plaintiff, though he had no right, according to this deduction, for five elevenths of the share belonging to his father Stephen Crane, at his decease.
After the death of Joseph Smith, the first tenant, 200 acres of the land came to the father of the defendant, who paid $22.40 a year for it to Stephen Crane, for eleven years; that is from 1786 to 1797, when he died. In 1800, his widow entered and pa-id the same rent to Minard Earley, the plaintiff, for 8 years, up to the year 1808. The 200 acres being then divided between her two sons so as to be equal in *316 quality; Joseph took 110 acres, and William the defendant, took 90 in severalty; and each-one paid to Minard Farley half their'father’s rent; that is to say, $11.20 a year from 1808 to 1st June, 1813. In 1815, the defendant, William Craig, believing that Farley had no legal title to the rent, or entertaining doubts concerning it, came to a resolution of *266] *exempting his part wholly from the burthen, by setting up a title to his land by adverse possession and length of time, and suppressing the receipts for payment of rent; accordingly, when Minard Farley came on the land, the latter part of 1815, to demand rent which had been arrear for more than a year, the defendant refused to pay him, and denied his right to it; he also prepared to defend his goods and property from being distrained, and to defend them by force against any attempt of that kind. It appears that there always was distrainable property on 'the land sufficient, and more than sufficient, to make the rent arrear. In the vacation preceding November term, 1815, Minard Farley brought the present ejectment, and'recovered a verdict, which the defendant moves to set aside upon the case, as it thus appeared in evidence. And he insists,
First. That the rent reserved in the deed of James Logan was not a fee simple descendible to heirs, and that the heirs of James Logan had no right or title to take or convey it; that it was a succession of terms for years, or chattel interests, which went to James Logan’s executors, and they alone had power to dispose of it; that each term has a peculiar rent which separates it from all that precedes or follows it; thus the first term is for 3 years at five pistoles; the next term is for 7 years at 2 1-2 pistoles á hundred acres ; the next term is for 107 years, at 3 pistoles a hundred; the next term is for 121 years, to be fixed by valuation at a new rent; and though it says that this new rent is to be paid forever ; yet at the end of every 121 years, ensuing the first, there is to be a renewed rent for the next 121 years, in like manner, forever ; shewing that the grantor meant by forever *317 no more than 121 years; and so makes one forever follow another; and thus mean a term or limited period of time, and not that indefinite time which characterizes a fee simple.
ISTow, I admit that there seems to be a clumsiness in the phraseology of the deed, but it is not sufficient to destroy or prevent, or very much to obscure the sense. Thus, in making the reservation, it estimates, 3, 7, and 107 years, as making an aggregate of 121, when they amount, in fact, to only 117 ; but the estimate being alleged under a videlicit, renders the error harmless, so as not to interfere with those periods which are strictly consecutive without any interval or discontinuance. So two forevers cannot *be [*267 less certainly than one, and one is certainly a perpetuity; but I think a fair reading of the deed will entirely explode this criticism on the word forever; this new rent cannot be diminished by a subsequent valuation, and therefore must be paid forever, together with as much more as any subsequent valuation will give; and so-this increment cannot afterwards be diminished, but must be paid forever. The power of valuation may, or may not, increase the preceding rent, but never can diminish it. Each preceding rent is to be paid forever, and as much more as can once be gained by a valuation, if it will give more. The rent is, therefore, a perpetuity, or a fee simple, like the land itself, to one and his heirs and assigns forever; and if it be an entire reservation in foe, without discontinuance, an increase in the quantum of rent from period to period forever, is so far from converting those periods into chattel interests, that it only fortifies the idea of its being a perpetuity or fee simple. There is an analogous case in Gilb. on Bents 109, taken from 4 Rep. 9 a. and Co. Lit. 153 a. “ If a lease be made for life, or in tail, reserving the first year a bushel of wheat, and afterward the annual rent of 51, the wheat and rent, though they be things of a different nature, are but one entire reservation.”
Second. The defendant insists that even if the plaintiff shews a title to the rent, he cannot make out a title to the *318 land, because it was conveyed away to Joseph Smith in fee simple; and though the rent be arrear, the statute gives him no right to an ejectment in a case of this kind. The statute, Rev. Laws 188, see. 7, copied from 4 Geo. 2, c. 28, does indeed provide that “ in all cases between landlord and tenant,” where half a year’s rent is in arrear, and the landlord has right by law to re-enter for non-payment, he may bring an ejectment without any formal demand or re-entry; but the statute mentions no case beside the one of landlord and tenant, where the landlord is owner of the fee by means of his reversion, as in cases of rent-service; whereas it is shewn in Cruise tit. 28, eh. 3, see. 15, and Gilb. on rents, 152, that there is no connection of tenure between a grantor and grantee in case of a rent charge; and therefore no ejectment can be maintained by virtue of the statute in this case, if there were no other objection than the one assigned. And if the plaintiff cannot maintain an ejectment for the land by virtue of the statute, so it is insisted,
*268] *Third, That he cannot by the terms and provisions of the deed ; for though a right of entry on the land is granted, in case the rent be in arrear and unpaid by the space of 12 months next after the day when the same ought to be paid; yet the law requires the rent to be strictly demanded before such re-entry is allowed to be made. And it appears by Co. Lit. 202, a; 1 Saund. 287, a. note 16; Adams on eject. 148, that such demand is to be made with the uttermost strictness ; it must be for the precise amount due, not a penny more or less, or it will be ill; precisely upon the last day, at a convenient time before sun set; upon the most notorious part of the land, as at the front door of the dwelling house, if there be a dwelling house; and the demand must be made in fact, though there be no one on the land to pay it. And it is insisted, that as these requirements have not been fulfilled by the plaintiff, he has no right of entry under the proviso, nor consequently, to maintain an ejectment.
*319 Now, though these niceties in making a previous demand of rent, are to be observed in some cases, the reason for them is plainly given in 1 Inst. see. 325, without which they are not to be insisted on. Littleton says, “ If a man enfeoff another in fee simple, reserving to himself and his heirs yearly, a certain rent, payable at a certain feast per annum, on condition that if the rent be behind, &o., it shall be lawful for the feoffor, or his heirs, to enter, &c.; in such case, if the rent be not paid at the time limited and specified within the condition, then may the feoffor or his heirs enter into such lands or tenements, and them, in his former estates have and hold, and the feoffee quite oust thereof; and it is called an estate on condition, because the estate of the feoffee is defeasible, if the condition be not performed.” Now the forfeiture of the tenant’s whole estate, and turning him and his family on the wide world, for non-payment of perhaps a few shillings rent on the precise day of payment, is such a severe and barbarous penalty, that courts of justice, leaning against it as much as possible, insisted on a demand being made of the rent with the utmost rigor and strictness, before they would allow the forfeiture to be enforced. But in this case there is no forfeiture of tho estate of Joseph Smith, or William Craig the defendant, supposing the rent to be 12 months arrear, and the plaintiff to recover the land, for he can hold it no longer than till the arrears are satisfied *out of the profits; the words [*269 of the proviso being, “until the said arrears, with all the charges thereon accruing, he fully satisfied and paid.” Here is no forfeiture, but a holding of the estate on just and equitable terms, till the rent is tendered or paid, or made out of the fair profits of the land, when the property returns to the defendant. The proviso resembles that in Co. Lit. sec. 327, from which it was probably taken. “ But where afeoffment is made of certain lands, reserving certain rent, &c., upon such condition that if the rent be behind, it shall be lawful for the feoffor and his heirs to enter, and to hold the land *320 until he be satisfied, or paid the rent behind, &c. In this case, if the rent be behind, and the feoffor and his heirs enter, the feoffee is not altogether excluded from this, but the feoffor shall have and hold the land, 'and thereof take the profits until he'be satisfied of the rent behind, and when he is satisfied, then may the feoffee re-enter into the same land and hold it as he held it before; for in this case the feoffor shall have the land, but in manner as for a distress, until he be satisfied of the rent,” &c. Lord Ooke in commenting on this section, observes that, “ By the feoffor’s re-entry he gains no estate of freehold, but an interest to take the profits in nature of a distress.” This shews the immense difference between defeating the estate forever for non-payment, and giving the feoffor a temporary interest only till the rent arrear is paid. And Butler, Lib. 3, note 93, says this distinction must be carefully observed. " Care must be taken,” he says, “ with respect to conditions or powers of re-entry, to distinguish between a general •condition that the lessor shall re-enter, and a special condition that he may enter and hold until payment and satisfaction.” The reason he assigns is, that where the power is a special one, only an interest vests in the feoffor on the rent becoming arrear. We have seen that this interest is not an estate of inheritance, nor even of freehold, such as the feoffor had before, but an interest defeasible on payment or tender of the rent arrear; and to the same effect is Cruise tit. 28, c. 1, see. 76, and Bac. Ab. Condition O. How such an interest is not an estate on condition, for a condition cannot be good in law that does not defeat the whole estate. This doctrine was settled by a consultation of judges in Mildmay’s case, 4 Rep. 40, b. 41, a.; and Butler Lib. 3, note 90, says, “ Every condition. *270] must defeat the whole *estate; a condition cannot be so framed as to make one and tlie same estate in any lands cease as to one person, and remain as to another; or cease for one 'time and revive afterward.” If it ceases, it does not remain, for that would be a contradiction. . If the estate of *321 the feoffee ceases upon a re-entry, it comes to an end; but here it ceases for the time the rent is arrear, and revives again on payment. Such a condition cannot be framed; it may be something else, it may be a limitation, but cannot be a condition.
Now those “ endless subtleties and distinctions,” touching a punctilious demand of rent, which Adams on ejectment, 148, says, “ disfigured the principles of law,” were applicable to conditions for defeating the whole estate ; before the grantee of a rent charge could mete out to the tenant of the freehold such excessive rigor, the courts measured out to him the most subtle and exact performance; but they never did so when he pursued another remedy instead of a forfeiture; for if he proceeded by distress, no previous demand was necessary ; and this holding of an estate till the rent arrear is made out of the profits and no longer, is said in Co. Lit. sec. 327, to be “in manner as for a distress.” The plaintiff had no occasion to observe those subtleties, therefore, in making a demand; ho entered on the land and demanded payment in common form, before the ejectment was brought, and that was enough. This answers the defendant’s third objection.
Here it becomes proper to enquire what the nature of this special power of re-entry is, if it be not a condition; which we have seen that it cannot be. And according to Co. Lit. sec. 327, and Butler, Lib. 3, note 93, it is an interest to take the profits. In Haverhill v. Hare, Cro. Jac. 510, the court said it was the limitation of a use, because in that case there was afine levied to the use of the grantee, provided the rent should be in arrear; but it appears from the latter part of Butler’s note, last cited, that a common law limitation is just as good. The only difference he supposes between them, was, that on the rent becoming arrear in case of a use, the statute annexes the possession to the use, and the grantee can maintain an ejectment immediately; but where there is no use he must make an actual previous entry. But where there exists a right of entry, the “ useless form,” as it is *322 *271] *called in Adams 146, of actually making an entry previously to bringing an ejectment, was dispensed with by Lord Hale in the case of Little v. Heaton, upon great advisement ; 2 Ld. Raym. 750 ; and afterward by Holt, C. J., and the whole court; and it was held that the confession of lease, entry and ouster, was sufficient without any actual entry; which decision has been adhered to ever since; 1 Saund. 287, a, note 16 ; Butler, Lib. 3, note 88. So the distinction between a limitation at common law, and one by way of use, is in effect done away. The proviso is not a condition, but a limitation over to the grantee until the rent arrear is paid, and then a limitation back again to the feoffee.
Fourth. The defendant’s next objection is, that a right of entry must be preceded by the concurrence of two events ; that of the rent being 12 months in arrear, and that of there being no sufficient distress on the premises, according to the terms of the proviso; yet the fact of a sufficient distress being always to be found on the premises, is incontestably established, wherefore there is no right of entry in the plaintiff, and consequently he cannot maintain an ejectment, .but must be left to distrain.
If the defendant had not forbid any distress, and even provided the means of resisting it by force and violence, he might have urged this point with a better grace, because he has now to pray that the plaintiff should be non-suited for not doing what he forbid to be done, and would have resisted. The words of the proviso are, “ if no sufficient distress could be takenand it hardly lies in the defendant’s mouth to say that a distress could have been taken. But an answer to this objection arises upon a different ground.
We find it laid down in Co, Lit. 201, b., respecting a rent charge, that “ the land is the principal debtor; for the rent issueth out of the land, and in an assise for the rent, the land shall be put in view; and if the land be evicted by a title paramount, the person of the feoffee shall not be *323 charged.” But though the land is principal debtor, it does not follow that the remedy is always against the principal, any more in this case than a multitude of others. There can be only one satisfaction, indeed, to a party, though he may have an election among several remedies. The law very often affords several, and the parties often create additional ones in their agreement, which afford a larger field of ^choice, though they never destroy those pro- [*272 vided by law. Now the remedies provided by law for rent arrear, are enumerated in Gilb. on Rents, 92, &c., by which it appears that the party may bring an assise, or an action of annuity; and the parties have provided additional ones in this deed, such as a special power of re-entry, a distress .and a covenant. If the plaintiff elects a remedy given by law, as for instance, an assise, It cannot be denied to him because he might have had an annuity or a distress ; and in this case he elects to forego all others, and pursue an assise or ejectment, which is the remedy substituted by modern times in its place.
The writ of assise is a remedy which the law has provided for a freehold rent, when it is unjustly taken away. Gilb. 100. “ If A. grants a rent charge to B. and his heirs, not only the grantee, but his heirs in infinitum, in case of a disseisin, may forever pursue their assise and writs of disseisin.” Gilb. 125. There must be a previous seisin in every case, or there can be no dis-seisin ; but it cannot be denied that the plaintiff has had actual seisin in this case by a perception of the rent himself, from 1800 to the year 1813, without bringing into view the seisin of those under whom he claims at least from the year 1786. Now disseisin of an incorporeal untangible thing, like rent, cannot happen against the will of the owner. Payment to a stranger, or delay of payment, are injuries that do not put him out of seisin, unless he elects to have it so for the sake of a remedy, as is manifest in all the books. He cannot be compulsively *324 disseised of an incorporeal hereditament, unless at his election. Cruise, tit. 28, c. 2, sec. 33, 34; 3 Bl. Com. 170; Lit. 587, 588.
As to what shall amount to a disseisin, we have it laid down in 3 Bl. Com. 170, thus, “With regard to freehold rent in particular, our ancient law books mention five methods of working a disseisin thereof." — the 5th, he says, is “By denial, which is when the rent being lawfully demanded is not paid.” So Lit. sec. 238, says, “ For denial is a disseisin of a rent charge.”
Thus it appears that an assise would lie beyond all question in the present case, as it involves a peremptory denial of the tenant to pay the rent; and if an assise, an ejectment; it being expressly said in 3 Bl. Com. 199, that “ Since the-disuse of real actions, this mixed proceeding is becoming the *273] commmon method of trying *the title to lands or tenements;” and in page 205, that, “it is founded on the same principle as the ancient writs of assize, being calculated to try the mere possessory title to an estate; and hath succeeded to those real actions as being indefinitely more convenient for attaining the end of justice.”
Fifth. The defendant objects that a rent charge granted to one person as an entire contract, cannot be divided into parts and shares by assignments, so as to have the rent apportioned among them, thereby subjecting the tenant to-an indefinite number of suits, distresses and entries, instead of one.
This objection has not been considered^ weighty one, for this reason, that a tenant who has his rent ready when it is-demanded of him on the land, can pay it in parcels, as easily as in a single sum, and if he will not pay on demand, as he contracted to do, he brings the evil on himself and has no right to complain. The apportionment of a rent charge in fee simple becomes unavoidable on the death of an ancestor leaving issue, as for example, five children ; among whom it must be equally divided under the statute *325 regulating the descent of lands, tenements and hereditaments. If a man thinks his affairs require a distribution •different from the law of descents, and he wishes to ■dispose of them according to the exigencies of his family by will, the statute of wills -would be very much abridged if he could not divide this hereditament among his childx-en ,or ci’editoi’s, like any other hereditament belonging to him ; and if he may divide it at his death, there seems to be no good reason why he may not do it in his life time. These principles coincide with those to be found in the books. Thus Gild, on Rents, 163, says, “ In some cases a rent •charge may be apportioned by the act of the party, as if ■the grantee releases part of his rent to the tenant of the land, such release does not extinguish the whole rent; so if the grantee gives part of it to a stranger, and the tenant attorns.” Now since attornments are taken away, the grant remains valid without it. The author’s reasoning is this, “since the law has established such sort of property, it would be unreasonable and severe, to hinder the proprietor from making a proper distribution of it for the promotion of his children, or to provide for the contingencies of his family.” Co. Lit. 148, a. is to the same effect. So Cruise, lit. 28, e. see. 21, 22, 23, 24. The same doctrine is laid down with great perspicuity in 3 Kent’s *Com. 375. [*274 “The objection to the doctrine of the apportionment of rents was, that it exposed the tenant to several suits or processes of distress, for a thing that was originally entire, and he ought not to be obliged to pay his rent in different parcels, and to several landlords, when he contracted to pay, in one entire sum, to one person. But the convenience of mankind dictated the necessity of an apportionment of rent in a variety of cases.” And in page 376, he concludes thus: “ there is no doubt, therefore, that a rent charge may be apportioned, whenever the reversioner or owner of the rent either releases part of the rent to the tenant, or conveys part of the rent to a stranger.” And that the assignee to *326 •whom the rent is conveyed will be entitled to all the remedies that would have belonged to the original grantee or his-heirs, appears manifestly from Cruise, Tit. 28, c. 1 sec. 78 ; Haverhill v. Hire, Cro. Jac. 510 and Butler’s notes Lib. 3 note 93.
Upon the whole, the plaintiff shews a right to all the rent apportionable.out of the 90 acres of the defendant, except Stephen Crane’s share of it, and to all but five-elevenths of that, yet outstanding among his heirs for ought that appears;, but enough to entitle him to hold the land until he is satisfied for what is justly due to him. How much that is, need not be settled in this action; but may be done in a different-way. I am of opinion that the plaintiff is entitled to judgment on the verdict, and that the rule to shew cause be discharged.
Opinion of Drake, J.
This cause came on to be tried at the Hunterdon Circuit,, before his honor, Justice Rossell, and a verdict was taken for the plaintiff, subject to the opinion of this court on the-facts contained in the state of the-case.
It appears from this, that, by indenture, made the first-day of June, A. D. 1740, between one James Logan, of .the-one part, and one Joseph Smith, of the other part, the said James Logan, “ for and in consideration of the several rentsthereinafter reserved, and performance of the covenants- and agreements thereinafter mentioned;” “granted, bargained, sold, enfeoffed, and confirmed, unto the said Joseph Smith;” a certain tract of land, situate in the township of Lebanon, in the county of Hunterdon, (in the said indenture particularly described) containing 382 acres ; “ with all and singular the hereditament and appurtenances whatso*275] ever *thereunto belonging, and the reversions and remainders thereof: To have and to hold ” the same, “ to-the said Joseph Smith, his heirs and assigns forever ; yielding and paying to the said James Logan, his heirs and- *327 assigns, for the same, for the full term of three years, commencing from the date of these presents, the yearly rent of five pistoles,”' — “ on the first day of June, yearly;” and yielding and paying, as aforesaid, for the next ensuing seven years, the yearly rent of two and a half pistoles for each 100 acres, and so in proportion for the other eighty-two acres; and yielding and paying as aforesaid, for the next ensuing 107 years, at the rate of three pistoles for each 100 acres; and, “ after the expiration of the last mentioned term ” (that is to say, the term of 121 years from the first entry of the said land) “which will be in the year of our Lord, 1857,” the land, &c., was to be valued, and a new amount of rent paid “ on the first day of June in every year forever; and in like manner, the like proceeding shall be renewed at the expiration of every like term of 121 years' forever after.
Next ensues a right of distress, reserved to the said James Logan, his heirs and assigns. Then follows a covenant to pay the rents to the said James Logan, his heirs and assigns. After which is added this proviso, “ that if any of the rents hereby reserved shall be in arrear and unpaid by the space of twelve months next after the day whereon the same ought to be paid, and no distress sufficient to satisfy the same can be found and ta,ken in and upon the hereby granted premises, then it shall and may be lawful to and for the said James Logan, his heirs and assigns, or any of them, into and upon the said described tract of land and premises, and the buildings thereon erected, or to be erected, and into every part and parcel thereof, with the appurtenances, wholly to re-enter, and the same, then and from thenceforth, to have again and re-possess, as in and of his and their former estate, and the said Joseph Smith, his heirs and assigns, thereout and from thenceforth, utterly to expel, amove and put out, until the said arrears, with all the charges thereon accruing, be fully satisfied and paid.”
*328 The premises passed from Smith to one Robert Craig, the father of the defendant, who died in 1797; after which, his widow possessed the premises, for some years. In 1809 the *276] farm was divided *between the defendant and his brother, Joseph Craig, by agreement, into equal moities, with respect to quantity and quality.
In 1801, Minard Farley, the plaintiff, purchased this rent charge of one David Crane, who claimed to be sole owner thereof.
It appeared, that about forty years previous to the time of this trial, and for many years in succession, Robert Craig, the father of the defendant, paid rent to Stephen Crane, the father of David Crane. But Stephen Crane died since the 24th day of May, 1780, leaving several children, and it did not appear that all their rights had been transferred to David.
After the purchase by Farley, the mother of the defendant, then in possession of the premises, paid rent for the same to Farley. And after her death, the defendant and his brother continued to pay the rent to him, until the year 1813, when disputes arose; the defendant questioned the plaintiff’s title, and refused to pay him any more rent; and this action was brought, returnable to November term 1815, for the purpose of recovering possession of the premises.
In Coke Lyttleton, sec. 217, it is laid down that “ if a man male a feoffment in fee, and by the same indenture reserveth to himself and his heirs, a certain rent,” with power of distress, “ such a rent is a rent charge; because such lands and tenements are charged with such distress by force of the writing only, and not of common right.” And in Bacon’s Abrid, title Bent, H., it is said, that such rent will go to the heir on the part of the father, even if the land had belonged to the mother, for “ here is an entire disposition of the land, “ and the rent is in nature of a new purchase from the grant of the feoffee.” The same principles are advanced in 2 Black. Com. p. 42; Gilbert on Rents, p. 38 ; 6 Bacon, p. 6; Cruises Digest, title Bents 28, ch. 1 secx. 16, and ch. 2, sec. 2.
*329 On the argument, it was insisted by the defendant’s counsel, that, by the operation of the statute of quia emptores the whole fee having been, in this case, granted to Smith, there was no reversion left in the heirs of Logan ; no fealty due them; no forfeiture, or distress incident thereto; but that the rent and the remedies to recover it depend on the contract alone. This is true. Gilbert on rents, p. 16; Cruise’s Digest, title 28, ch. 1, sec. 15. But it was further insisted, that this indenture created merely terms for years, and therefore this rent being but a chattel interest, and there being *no reversion in the heirs of Logan, although the rent [*277 and the remedies are expressly reserved to them, yet it should go to the executor. And this also appears to be law. Bacon, title Bent, letter H. But I think there is error in the fact assumed, that the indenture created merely chattel interests in the rents. This rent, although, in form, it is divided into successive terms, is, in substance, a perpetual rent. There is but one estate in the rent, although it varies in amount at particular periods, into which it is divided for the simple purpose of accommodating it to the increasing value of the lands. The slight error in summing up the three first periods makes no difference; it creates no suspension of the rent, as there is sufficient on the face of the deed, to shew the intention with certainty. It is a freehold interest, and very properly reserved to James Logan, his heirs and assigns.
The result is, that, by the indenture of 1740, an estate' in fee simple was conveyed to Joseph Smith, his heirs and assigns; and a perpetual rent charge reserved to James Logan, his heirs and assigns.
But it is objected that Farley claims as an assignee of the rent charge, and although the rent, and the power to distrain might be assigned, yet he can take no advantage of the clause of re-entry; that, by the common law, the original owner, and his representation, were the only persons who could take advantage of the breach of a condition. On the other hand, the benefit of the statute, Rev. Laws, 314, taken from the *330 32d Henry 8th, eh. 34, is claimed for the plaintiff. And it .is also insisted that this is not strictly a conditional estate, .but a qualified limitation of it, so that if the rent be in arrear for twelve months, the estate shall cease for an indefinite period, and an immediate right of possession becomes vested in the grantee of the rent charge, his heirs, or assigns, as .the casé may be. This estate is described generally in Coke Lyttleton, sec. 327; and is one of peculiar character. In the case of Havergill v. Hare, Croke James 510, it was resolved, by all the justices, that “ this contingent and future use, to arise upon non-payment of the rent, was a matter of inheritance, and being for the security of the payment of rent, and waiting upon the rent, might well be transferred with the rent, and by the grant of the rent, the penalty and advantage well passed.” And they further resolved, that the grantee “ had such an estate that he might make a lease, *278] and that this *lease was good until the rent was paid; and it is quasi a conditional inheritance, which shall go to his heirs and assigns, but always determinable upon the payment of the rent,” and see Jemott v. Cowley, 1 Saunders, 112, and Butler s notes to Coke Lyttleton, 327. In the case in Croke James, a fine was levied, in aid of the reservation of the right of entry; but, in the case in Saunders, the reservation stood alone, without any auxiliary conveyance; the entry, however, was made by the original grantee of the rent charge. And in Butler’s notes, above referred to, a distinction is intimated as to the necessity of actual entry, in order to support an ejectment, between the cases where there is a conveyance, and those where it rests simply upon the proviso or condition. But actual entry, since the time of Lord Hale, has been, with some few exceptions, considered unnecessary. The right of entry in the assignees, and power to bring an ejectment, are recognized in the above cases. And we certainly may incline to give to the assignee the benefit of this express agreement of the parties in his favor, here in Hew Jersey, where every day’s practice *331 shews the prostration of principles founded on the old common law doctrine of maintenance. On this subject I would also refer to Gilbert on rents, from p. 100 to 106, and from 133 to 140 inclusive. Cruises dig. title 28, sec. 76, 77 # 78; 3 Bl. Com. 169, 170; 1 Levins 170; 2 Lord Raymond 750, and 2d South. 705.
But suppose this to be such an estate as may vest in an assignee, does Minard Farley stand in that capacity ? In deducing title from James Logan, he does not shew that all the interests, into which this rent charge has, in the course of time, become divided, are united in himself. To this objection, the plaintiff’s counsel reply, that his title was recognized by the mother of the defendant, and himself, from 1801 to 1813 without objection ; that for the five last years of this period, this defendant paid his rent without dispute? and that he should not now be permitted to deny the plaintiff’s title. And they quote lst Ph. ev. 181; 2 Bl. 1259; 10th Johnson 377; 3d do. 504, 7 do. 186, and other authorities. Although I do not consider these parties, in all respects, as standing in the relation of landlord and tenant, yet the estoppel arising from acknowledgment of title, extends to many other cases, being founded in public policy, and necessary to the security of the rights of persons against the effects of time and accident. And I *think there is much force in the [*279 arguments used in favor of applying the doctrine to this case. But I consider it unnecessary to give an opinion on this point, from the view I shall take of other parts of the case.
The same policy may be permitted to operate on the principles applicable to the subject of apportionment of rent. Rent charges may be apportioned by contract or by descent; they may be divided by assignment, or by the act of law. Bacons Abdt. title Rent, letter M. ; Gilbert on Rents, from 156 to 169 inclusive. In this case, we find the father of the defendant, forty years ago, paying a special amount of rent, for a part of the lands originally subjected to rent charge ; and it was continued for nearly thirty years by the *332 father, mother, and the defendant himself. This is abundant evidence of an apportionment by contract. And when the defendant and his brother divided the farm, equally, in value, and each, for several years thereafter, paid the half of the rent, it is evidence of the agreement of all the parties thereto, and should not now be disputed. If any new circumstances had arisen, since the payment of rent by the defendant, to affect Earley’s title to the whole, or to part of the rent, as for instance, an alienation by Earley, it might be shewn. But this not being the case, I am of opinion that the defendant should not be permitted to dispute that the amount of rent due for his land is the same which he has heretofore voluntarily paid. And Earley is unquestionably, entitled to part of it, if not the whole.
. And as to the right of entry.being parted. Tenants in common disseised of rent, not only may, but formerly must have brought their several assises. Bacon’s Abdt. vol. Q,p. 14; Gilbert on Rents p. 164. And although, says this last author, these divisions of rent charges have been objected to, because the tenant then would be exposed to several suits and distresses for a thing which in its original creation was entire; yet it is in the tenant’s choice whether he will submit himself to that inconveniency, because the grantee can make no benefit of the grant by distress without consent or attornment of the tenant, nor by assise, without obtaining seisin of it from the tenant.” And although since Lord Chief Baron Gilbert wrote, the necessity of an attornment is taken away; still a division or apportionment of a rent charge, by a conveyance of part of *280] it to a stranger is held good.” * Cruise, title 28; ah. 3 sec. 24. In this case, Farley had become seized of the rent by repeated payments, made to him by the defendant; and by the ancient law would have been entitled to his assise, and is of course, by the modern law, entitled to his action of ejectment.
But the demand of the rent is objected to, as not having been made with that strictness which is necessary to creaet *333 a forfeiture, and authorize a re-entry. For this purpose great strictness is required by the law, and very properly, because it is presumed that the tenant is on the land at the day, ready to pay his rent, and more especially because of the heavy penalty incident to non-payment, to wit, the forfeiture of his whole estate in the land. And although the Court of Chancery will now relieve, in cases of forfeiture for non-payment of rent, yet the law, having become settled with respect to the proper demand of rent, under a state of things furnishing good reasons for great strictness, has not changed notwithstanding those reasons do not now exist in their full force. But in this case, as has been justly said by the defendant’s counsel, there is no reversion in the heirs of Logan, or his grantees ; no fealty due; no forfeiture of the land for non-payment; no right of distress or re-enty, except according to the words of the grant. And those are, that “if the rents be behind and unpaid for the space of twelve months next after the day whereon the same ought to be paid,” &c., “it may be law'ful for the said James Logan, his heirs or assigns,” to re-enter and hold “ until the said arrears with all the charges thereon accruing he fully satisfied a,nd paid.” This then is mere remedy to enforce the payment of the rent, with very little of the nature of a forfeiture in it. The time may have been when the use of the land, until relieved by the payment of the rent, would have been lost to the tenant. But that is not now the case. For even, if, by the words, Logan would have been entitled to hold the lands and the profits, until Smith paid the rent, yet the Chancellor would relieve and compel an account of the proceeds of the land. But the defendant was never remediless as in the case of strict forfeiture. There could be no danger of his being injured by a demand being made at an unexpected time, and when unprepared, for he could tender the rent at any time, and thus relieve himself from all penalties. Is there, then, any good reason for that strict demand which is applicable *334 *281] *to a case of forfeiture ? I think not, and upon this view of the case, we might fairly question the necessity of making it, although there are good writers that appear to require it. But if we' are to. regard this in the light of a limitation instead of a condition, all technical difficulty is removed. And, it may be observed, that in the case in Croke James, 510, the demand was not made at the precise time. And, besides, the reason of the defendant’s not paying, was not for want of proper opportunity, but because he had begun to doubt of Farley’s right; and upon this ground he refused, when payment was demanded. For this reason, if not for the others, a strict demand is unnecessary. In the case of Jackson v. Collins, 11 John. p. 5, Chief Justice Kent says : “ If the tenant deny the holding altogether., it would be vain and idle to require the landlord to go on and make a regular demand at the precise time, and of the precise sum due.” And that was a case of strict forfeiture. In the present case, it appears by the testimony of several witnesses, that there was a demand of the rent on the premises, and an unqualified refusal to pay, and the reasons for it. And I am of opinion that the demand was sufficient.
But there is a remaining objection, founded on the condition to which this right of re-entry is subject, to wit, that “ no distress sufficient to satisfy the same, can be found and taken in and upon the hereby granted premises.” The evidence is clear and plenary, that there was always an abundance of property on the premises to satisfy the rent. How then could the right of re-entry be exercised by Farley ? By the agreement this does not accrue, if there be a sufficient distress. This difficulty is attempted to be overcome in two ways. First, By the testimony of Joseph Craig; who swears, that the defendant and himself had resolved not to pay any more rent, nor to suffer a distress for the same, and. that they would even proceed to violence in prevention of it, if attempted. But the defendant was at liberty to abandon these resolutions, if he had formed them. They were not *335 communicated to Farley, nor is there any evidence that he had any knowledge of them, or any just grounds to apprehend resistance. There were no threats to justify him in not attempting a distress.
And in the next place, it is insisted, that there was here a ^sufficient denial of the rent, and disclaimer of the [*282 plaintiff’s title, to constitute such a disseisin of this incorporated hereditament, as would give to Farley, by the common law, and independent of the terms of the deed, a right to re-enter; and, of course, to bring an ejectment. But I have said before, that there having been a grant of the 'whole fee simple, from Logan to Smith, there is no estate or right of re-entry, in Farley, except by virtue of the contract, either according to its express provisions, or by construction of law. If there bo a disseisin of the rent, the law may annex to the contract the right of entry, and a remedy by assise. But in this case, Logan having submitted for himself, his heirs and assigns, so far as respects the non-payment of rent, to stipulate for a re-entry upon an express condition, he has impliedly given up all right to re-enter for the same cause, except subject to that condition. Expressum faeit cessare taciturn. And setting aside the subject of rent, a disclaimer of title, to create a forfeiture, if applicable at all to this case, must be otherwise than by parol; 11 John. p. 1; 2 Bl. Com. 275.
Upon the whole case, 1 am of opinion, that the plaintiff is not entitled to recover.